UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL SMITH,

        Plaintiff,

v.

SORDETTO INC.,
d/b/a B&H PROCESSING, and
ANTHONY J. SORDETTO III,

        Defendants.

_____/

<u>COMPLAINT</u>

## I.    Introduction

1.    This is an action for damages and other relief brought by plaintiff against defendant debt collectors for acquiring and unlawfully using plaintiff's stolen credit and personal financial information to contact plaintiff and attempt to coerce the payment of money from plaintiff through false and unlawful threats of litigation and other adverse consequences, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,* Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*

2.    Defendants, along with other entities and individuals to be identified in discovery, are involved in a large, elaborate, and ongoing scheme to contact consumers across the country and falsely threaten litigation, prosecution and other adverse consequences unless the consumers

1

pay money to defendants to supposedly satisfy counterfeit, paid, or time-barred debts.

Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

3.      These schemes are epidemic and are operated by thousands of entities located in

and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York,

Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina.

4.      On November 4, 2015, the Federal Trade Commission and other law enforcement

authorities around the country announced the first coordinated federal-state enforcement

initiative targeting deceptive and abusive debt collection practices. The "Operation Collection

Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and

local law enforcement authorities against collectors who use illegal tactics such as harassing

phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets

debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do

not actually owe.  See www.ftc.gov/news-events/press-releases/2015.

5.      On September 29, 2020, the "Federal Trade Commission, along with more than

50 federal and state law enforcement partners . . . announced a nationwide law enforcement and

outreach initiative to protect consumers from phantom debt collection and abusive and

threatening debt collection practices . . . [with two new FTC cases against companies that] were

trying to collect debts they cannot legally collect or that a consumer does not owe – a practice

known as phantom debt collection." See https://www.ftc.gov/news-events/press-releases/2020/

09/ftc-state-federal-law-enforcement-partners-announce-nationwide.

6.      The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a

felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification

of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information. It is an express violation of the FDCPA to commit a crime in connection with the collection of any debt.

## II.    Jurisdiction

7.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.

## III.    Parties

8.    Plaintiff Daniel Smith is an adult, natural person residing in Michigan. Plaintiff is a "consumer" and "person" as the terms are defined and used in the FDCPA. Plaintiff is a "person"as the term is defined and used in the DPPA. Plaintiff is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

9.    Defendant Sordetto Inc. is a New York corporation, FEIN 82-112xxxx, formed on or about April 11, 2017. Sordetto Inc. likely operates defendants' credit identity theft and debt collection scam at 1675 Niagara Street, Suite 6, Buffalo, New York 14207. Sordetto Inc. also has operated at 2338 Elmwood Avenue, Kenmore, New York 14217. Sordetto Inc. uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Sordetto Inc. regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Sordetto Inc. is a "debt collector" as the term is defined and used in the FDCPA. Sordetto Inc. is a "regulated person" as the term is defined and used in

MRCPA. Alternatively, Sordetto Inc. is a "collection agency" and "licensee" as the terms are defined and used in MOC.

10.     Sordetto Inc. does business as B&H Processing, pursuant to an assumed name certificate filed February 18, 2021 with the County Clerk for Erie County, New York, and recorded in Book 14134, Page 1432, instrument # 2024132714.

11.      Sordetto Inc. maintains the Sordetto Inc. 401(K) Plan, that is administered by d efendant Anthony J. Sordetto III, 53 Autumnview Road, Amherst, New York 14221.

12.     Sordetto Inc. currently maintains workers compensation insurance for defendants' debt collection employees through Phoenix Insurance Company, Policy Number UB9P5611312442G, and maintains disability and paid family leave insurance for defendants' debt collection employees through Hartford Life and Accident, Policy Number LNY909966001.

13.     Sordetto Inc. and its employees and agents operate their credit identity theft and debt collection scam using multiple unregistered aliases, including: Client Services; D.H.P. Group; D.H.P. Law; D.H.P. Legal Group; D.H.P. Mediation; Mark Allen; Jacob Myles, Esq.; and Attorney Jacob Myles.

14.     Sordetto Inc. through its employees and agents, directly and indirectly participated in the unlawful efforts to collect an alleged debt from Plaintiff that are described in this complaint.

15.     Sordetto Inc. through its employees and agents, directly and indirectly participated in the acquisition, disclosure and use of Plaintiff's stolen, private, personal, financial and account information, without a permissible purpose, as described in this complaint.

16.     Defendant Anthony J. Sordetto III, also known as Anthony Joseph Sordetto, also known as "AJ Sordetto," is a natural person, age 45, residing at 53 Autumnview Road, Amherst,

New York 14221. Mr. Sordetto is an owner, director, officer, manager, employee and agent of Sordetto Inc. Mr. Sordetto uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Sordetto regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Sordetto is a "debt collector" as the term is defined and used in the FDCPA. Mr. Sordetto is a "regulated person" as the term is defined and used in MRCPA. Alternatively, Mr. Sordetto is a "collection agency" and "licensee" as the terms are defined and used in MOC.

17.     Mr. Sordetto when conducting defendants' credit identity theft and debt collection scam uses the alias "Jacob Myles" and falsely represents himself to be a licensed attorney.

18.     Mr. Sordetto sometimes uses the email addresses asordetto@gmail.com and asordetto@yahoo.com to conduct defendants' credit identity theft and debt collection scam.

19.     Mr. Sordetto sometimes uses the telephone number 716-207-9000 to conduct defendants' credit identity theft and debt collection scam.

20.     Mr. Sordetto has used a series of now defunct entities to conduct defendants' credit identity theft and debt collection scam, including: Enterprise Check Systems Inc.; Politan Processing Corporation; International Contract Enforcement Inc., a/k/a National Contract Enforcement Incorporated; Pinnacle Processing Inc; Rosenthal & Drake, LLC; and Goldstein & Dwyer, LLC.

21.     Mr. Sordetto (a) created the collection policies and procedures used by Sordetto Inc. and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Sordetto Inc., (c) oversaw the application of the collection policies and procedures used by Sordetto Inc. and its

employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by

Sordetto Inc. and its employees and agents to collect debts from consumers, including the tactics

and scripts that were used to attempt to collect an alleged debt from Plaintiff as stated in this

complaint, (e) ratified the unlawful debt collection practices and procedures used by Sordetto Inc.

and its employees and agents in connection with their common efforts to collect consumer debts,

and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection

practices used by Sordetto Inc. and its employees and agents, all who participated and acted in

concert, to obtain Plaintiff's personal and financial information, and use that information to

contact and falsely threaten Plaintiff with litigation, prosecution, and other adverse consequences,

unless Plaintiff paid money to defendants, as described in this complaint.

22.     Mr. Sordetto directly and indirectly participated in the unlawful efforts to collect

an alleged debt from Plaintiff that are described in this complaint.

23.     Mr. Sordetto directly and indirectly participated in the acquisition, disclosure and

use of Plaintiff's stolen, private, personal, financial and account information, without a

permissible purpose, as described in this complaint.

24.     Defendants own, control and use a Merchant Account established in the name of

B & H Processing, located in Buffalo, New York, telephone number 800-674-3512, to receive

credit card and debit card payments from their victims. Money deposited in the Merchant

Account is shared among and distributed to the defendants named in this lawsuit, their employees

and agents, and perhaps others. The application that was filed by defendants with the Acquiring

Bank to create the Merchant Account, as well as the related monthly account statements and

other account records, will need to be obtained from the Acquiring Bank via subpoena in

discovery, so that plaintiff can identify the other entities that receive distributions of money from

the Merchant Account and are involved in defendants' debt collection scam.

25.     Defendants and their employees and agents when operating defendants' credit identity theft and debt collection scam use multiple telephone numbers, including: 800-674-3512; 855-447-5149; and 855-507-2994. The subscriber to telephone number 800-674-3512 (which is associated with defendants' merchant account) is Anthony J. Sordetto III, and is paid for by Mr. Sordetto with a credit card ending in 1005. Calls placed to telephone number 800-674-3512 are automatically forwarded to Mr. Sordetto's cellular telephone number 716-207-9000.

26.     All defendants, along with other individuals, as through multiple entities and their owners, officers, members, managers, employees and agents, have been and continue to be engaged in a fraudulent and ongoing scheme to obtain from consumers money allegedly due and owing on delinquent payday loans.

27.     Plaintiff is proceeding against defendants collectively under a common enterprise theory, under which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a "maze of interrelated companies," exists, courts consider "the pattern and framework of the whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745, 746 (2d Cir. 1964). Although no one factor is controlling, relevant factors include whether the corporate defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at 469 (citation omitted); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011 WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011). Further, a common enterprise analysis is neither an

alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. *F.T.C. v Wyndham Worldwide Corp.*, No. 13-1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing *F.T.C. v. Direct Benefits Grp.*, No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

28.     All defendants, and other entities to be identified in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to acquire, collect, and re-sell stolen accounts related to debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants.

29.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

30.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts,

materially participating in the activities of the company, supervising collection activities,

overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for

the reason that each such individual is himself a "debt collector" within the statutory definition,

namely, each is a "person" in a business, "the principal purpose of which is the collection of any

debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of*

*Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth*

*Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.   Facts

31.   On or about February 26, 2013, plaintiff Daniel Smith borrowed several hundred

dollars, via the internet, for a term of several weeks, in what is commonly known as a "payday

loan," at an annual interest rate that exceeded 300 percent.

32.   In Michigan, payday loans are regulated by the Deferred Presentment Service

Transactions Act, MCL 487.2122 *et seq.*, which expressly provides that it is not a crime to fail to

repay a payday loan.

33.   Plaintiff used the borrowed funds exclusively to purchase goods and services for

personal, family and household purposes, specifically to pay for groceries, personal

transportation, housing, and household utilities. Plaintiff did not use the borrowed funds for any

business purpose. Plaintiff did not own any business when Plaintiff borrowed and used the funds.

Plaintiff did not claim the borrowed funds as a business expenses on any federal, state or local

income tax return. Plaintiff was not reimbursed by any employer for any purchases made with the

borrowed funds. Any resulting obligation of Plaintiff to pay money to repay the borrowed funds

was a "debt" as the term is defined and used in the FDCPA, MRCPA and MOC.

34.     Plaintiff was unable to timely repay the borrowed funds.

35.     In 2013, the original creditor declared Plaintiff in default.

36.     In 2013, the original creditor charged off and sold Plaintiff's account and related debt to debt buyers.

37.     Plaintiff later paid off the debt.

38.     Regardless, the account and any related alleged debt is no longer judicially enforceable by operation of the applicable Michigan six-year statute of limitations. Stated differently, the account and any related alleged debt is time-barred.

39.     Unfortunately for Plaintiff, after Plaintiff's account and related alleged debt were sold to debt buyers, information regarding the account along with Plaintiff's personal and financial information were stolen and Plaintiff's credit identity was compromised. To this day, information regarding the account along with Plaintiff's personal and financial information have been periodically and repeatedly sold and resold to various entities around the country, who have used that information to create fake accounts and fake debts, and repeatedly contact Plaintiff and falsely threaten Plaintiff with arrest, criminal prosecution, civil litigation, judgments, liens, garnishments, and other adverse consequences, in efforts to extort the payment of money from Plaintiff to supposedly satisfy the fake accounts and fake debts, which Plaintiff does not owe and the perpetrators have no right to collect.

40.     As described below, the entities named as defendants in this complaint are some of the more recent credit identity thieves and debt collection scam operators to obtain Plaintiff's stolen account information and personal financial information, use that information to create a

fake account and fake debt, and contact and threaten Plaintiff with prosecution, litigation, and other adverse consequences, in efforts to extort the payment of money from Plaintiff.

41. On July 22, 2024, defendants' employee and agent, known as a point caller, placed a call to Plaintiff's cellular telephone with a Michigan area code and left the following scripted message on Plaintiff's voice mail: "This is Compliance Officer Mark Allen, calling for Daniel Smith, regarding an Order of Location. We had two separate dates in this month of July, the County Process Server was unable to get you out a subpoena and serve you hand to hand. Your lawyer can call my office and I can force the process server to bring the subpoena to their firm if you don't want to be served at work, but your mark is non-compliant, so if we don't hear from your attorney, they'll just serve you on the job. It's just policy because they have a certain amount of time to get the papers to. Have the lawyer call and ask for me by name, Mark Allen, and I can absolutely make sure that they will get the papers instead. 855-447-5149."

42. On or about July 24, 2024, Plaintiff placed a return call to telephone number 855-447-5149, which was answered by defendants' employee and agent, who identified himself as "Attorney Jacob Myles" with "D.H.P. Legal Group." In the ensuing conversation, defendants' employee and agent made the following representations:

a) Plaintiff owed $3,560.45 in connection with an unpaid payday loan, obtained on February 26, 2013, from CashNet, with the original account number 15234614.

b) The loan had been "financed" by "Money Mutual."

c) "You're being pursued in litigation for Money Mutual and CashNet."

d) Plaintiff was being sued by Money Mutual/CashNet for breach of contract.

11

e)     Plaintiff was being criminally charged for "defrauding a financial institution."

f)     D.H.P. Legal Group is a law firm, retained by Money Mutual/CashNet to file suit against Plaintiff.

g)     Jacob Myles is an attorney with D.H.P. Legal Group. Mr. Myles claims to have graduated from Cornell University Law School and to have passed the Illinois State Bar Exam.

h)     D.H.P. Legal Group was authorized by the Money Mutual to settle the account and related lawsuit with Plaintiff to pay $3,200.00 to defendants.

i)     If Plaintiff did not pay money to defendants, the Money Mutual would place the account on Plaintiff's credit report and harm Plaintiff's credit score.

j)     If Plaintiff did pay money to defendants, then Plaintiff's credit score would be improved.

k)     If Plaintiff paid $3,200.00 to defendants, then defendants would "generate a Court Release Number" and "tie it to [Plaintiff's] Social Security Number," so that Plaintiff could not be sued again for the same debt.

l)     "We are D.H.P. Law. We are the attorneys handling your case."

m)     "It's basically a big game of 'see how bad we can screw this guy over and over again,' that's my job, I apologize."

43.    On July 24, 2024, defendants' employee and agent, "Jacob Myles, Esq." with "D.H.P. Group," sent an email from mediationdhp@yahoo.com to Plaintiff. Attached to the

12

email was a one-page letter on D.H.P. Group letterhead, stating that "Money Mutual/Cashnet is now pursuing civil litigation for the amount of $3560.45," and offering to settle with Plaintiff to pay $3,200.00 to defendants. A copy of the email and letter are attached to this complaint as Exhibit A.

44.     On July 24, 2024, in response to defendants' false threats of litigation, prosecution, harm to credit, and other adverse consequences, Plaintiff provided Plaintiff's Michigan residential and billing address, and made a payment of $400.00 to defendants by debit card, which defendants caused to be deposited in a Merchant Account maintained in the name of B & H Processing, located in Buffalo, New York, telephone number 800-674-3512.

45.     On September 12, 2024, Plaintiff communicated with CashNetUSA and was advised that Plaintiff has never had an account or debt with CashNetUSA, and that the account and alleged debt defendants were attempting to collect from Plaintiff was counterfeit.

46.     There is no licensed attorney named Jacob Myles anywhere in the United States of America.

47.     No person named Jacob Myles has ever graduated from Cornell University Law School.

48.     The above-described threats and representations made by defendants and their employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce and extort the payment of money from thousands of consumers across the country through the use of false threats of litigation and prosecution, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of consumers' stolen account and personal information.

49.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

50.     Defendants and their employees and agents falsely represented and inflated the amount of Plaintiff's alleged debt.

51.     Defendants and their employees and agents falsely represented that Plaintiff owed a debt that is not owed.

52.     Defendants and their employees and agents falsely represented that they were entitled to collect a debt that they had no right to collect.

53.     Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

54.     Defendants and their employees and agents falsely represented that Plaintiff owed $3,560.45 in connection with a payday loan account from 2013.

55.     Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a stolen or counterfeit account, as well as Plaintiff's stolen personal and financial information, in an effort to coerce the payment of money from Plaintiff.

56.     Defendants and their employees and agents wrongfully and falsely represented and falsely implied that a lawsuit had been filed against Plaintiff to collect a time-barred debt, when in fact, the debt was no longer judicially enforceable by operation of Michigan's six-year statute of limitations.

57.     Defendants and their employees and agents falsely represented and falsely implied that they are mediators.

58.     Defendants and their employees and agents falsely represented and falsely implied

14

that they are arbitrators.

59.     Defendants and their employees and agents falsely represented and falsely implied that they are attorneys and a law firm.

60.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

61.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit would be filed against Plaintiff to collect the alleged debt.

62.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Plaintiff to collect the alleged debt.

63.     Defendants and their employees and agents falsely represented and falsely implied that Plaintiff had committed fraud and defrauded a financial institution.

64.     Defendants and their employees and agents falsely represented and falsely implied that Plaintiff had committed a crime.

65.     Defendants and their employees and agents falsely represented and falsely implied that Plaintiff would be prosecuted unless Plaintiff paid money to defendants.

66.     Defendants and their employees and agents falsely represented and falsely implied that the courts were participating in defendants' efforts to extort the payment of money from Plaintiff.

67.     Defendants did not intend to file a lawsuit against Plaintiff in any court in efforts to collect the alleged debt.

68.     No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any consumer.

69.     Defendants and their employees and agents falsely represented and falsely implied that Plaintiff's credit score would be negatively affected if Plaintiff did not pay money to defendants.

70.     Defendants and their employees and agents falsely represented and falsely implied that Plaintiff's credit score would be positively affected if Plaintiff did pay money to defendants.

71.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

72.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

73.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

74.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

75.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

76.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

77.     The FDCPA states that it is unlawful for a debt collector to falsely represent or

imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

78.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

79.    The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

80.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

81.    The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

82.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

83.    The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

84.    The FDCPA states that it is unlawful for a debt collector to falsely represent or

imply that documents are legal process.  15 U.S.C. § 1692e(13).

85.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

86.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

87.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

88.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

89.     The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

90.     Defendants and their employees and agents failed to timely send to Plaintiff a notice containing the information required by 15 U.S.C. § 1692g(a).

91.     Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

92.     Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

18

93.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

94.     Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

95.     Michigan law, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made.  *People v. Maranian*, 359 Mich. 361 (1960).

96.     Defendants and their employees and agents engaged in criminal extortion, a felony, in their efforts to coerce the payment of money from Plaintiff, by falsely accusing Plaintiff of defrauding a financial institution and wrongfully threatening Plaintiff with prosecution. It is an express violation of the FDCPA to commit a crime in connection with efforts to collect an alleged debt.

97.     Defendants and their employees and agents violated the Identity Theft and

Assumption Deterrence Act, 18 U.S.C. § 1028, in their efforts to coerce the payment of money from Plaintiff. It is an express violation of the FDCPA to commit a crime in connection with efforts to collect an alleged debt.

98. In connection with efforts to collect an alleged debt from Plaintiff, defendants and their employees and agents obtained and used personal information regarding Plaintiff from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

99. The database used by defendant was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

100. The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

101. The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

20

18 U.S.C. § 2722.

102.    The DPPA also states:

"personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

103.    The DPPA also states:

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

104.    The DPPA enumerates the only "permissible uses" for which personal information may be obtained. 18 U.S.C. § 2721(b).

105.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Plaintiff.

106.    Defendants used the database to obtain, disclose and use personal information regarding Plaintiff.

107.    Defendants made a false representation to the provider of the database to obtain personal information regarding Plaintiff that was derived from Plaintiff's motor vehicle record.

108.    Alternatively, the entity that obtained Plaintiff's personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Plaintiff that was derived from Plaintiff's motor vehicle record.

109.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

21

110.    Defendants knowingly obtained, disclosed and used Plaintiff's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

111.    Defendants did not have a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Plaintiff's personal information obtained from the database.

112.    Defendants did not have Plaintiff's consent, permission, authorization or waiver to obtain Plaintiff's personal information from the database.

113.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

114.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

115.    Defendants intentionally and wilfully violated the DPPA.

116.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, Plaintiff has suffered actual damages and injury, including but not limited to, invasion of privacy, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which Plaintiff should be compensated in an amount to be established at trial.

## V.      Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

117.    Plaintiff incorporates the foregoing paragraphs by reference.

118.     Defendants have violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a)      Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)      Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)      Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

119.     Plaintiff incorporates the foregoing paragraphs by reference.

120.     Defendants have violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining, using or

disseminating plaintiff's personal information, pursuant to 18 U.S.C. §

2724(b)(4); and

e)      An order requiring defendants to provide plaintiff with the original and all copies

of any and all documents of any kind that contain any of plaintiff's personal

information, pursuant to 18 U.S.C. § 2724(b)(4).

**Count 3 – Michigan Regulation of Collection Practices Act**

121.    Plaintiff incorporates the foregoing paragraphs by reference.

122.    Each defendant has violated the MRCPA.  Each defendant's violations of the

MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a

misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the

purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication

with a debtor the following: (i) the legal status of a legal action being taken or

threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the

nonpayment of a debt will result in the debtor's arrest or imprisonment, or the

seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or

abusive method to collect a debt; and

f)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure

designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

123.    Plaintiff incorporates the foregoing paragraphs by reference.

124.    Each defendant has violated the MOC.  Each defendant's violations of the MOC

include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a

misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the

purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication

with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e) Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f) Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a) Actual damages pursuant to M.C.L. § 339.916;

b) Treble the actual damages pursuant to M.C.L. § 339.916;

c) Statutory damages pursuant to M.C.L. § 339.916;

d) Equitable relief pursuant to M.C.L. § 339.916; and

e) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

Dated: September 16, 2024

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
Centennial Plaza, Ste. 205
2851 Charlevoix Dr. SE
Grand Rapids, MI 49546-7090
(616) 776-1176
ConsumerLawyer@aol.com